# United States Court of Appeals for the Federal Circuit

---

**LEVI STRAUSS & COMPANY,**
*Appellant,*

**v.**

**ABERCROMBIE & FITCH TRADING CO.,**
*Appellee.*

---

2012-1495,-1496

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board Nos. 91175601 and 92049913.

---

Decided: June 18, 2013

---

GREGORY S. GILCHRIST, Kilpatrick Townsend and Stockton LLP, of San Francisco, California, argued for appellant. With him on the brief was GIA L. CINCONE.

J. MICHAEL KEYES, K&L Gates LLP, of Spokane, Washington, argued for appellee. With him on the brief was WHITNEY J. BARAN. Of counsel was BRYAN J. SINCLAIR, of Palo Alto, California.

---

Before LOURIE, O'MALLEY, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Abercrombie & Fitch Trading Co. created a stitching design to use on clothing as a brand-identifying trademark. It sought to register the design with the Patent and Trademark Office for use on a wide range of clothing. It also began to use the new mark on one line of clothing. Levi Strauss & Co., which has used a trademark stitching design on the pockets of its jeans for a hundred years, challenged Abercrombie's mark in two forums. It sued Abercrombie in district court, alleging that the use Abercrombie was then making of its new mark infringed and diluted Levi Strauss's old stitching-design mark. Levi Strauss also challenged Abercrombie's registrations at the PTO as covering uses likely to cause confusion with and dilution of Levi Strauss's mark.

After the district-court litigation ended, the PTO's Trademark Trial and Appeal Board dismissed Levi Strauss's registration challenges on the ground that the result of the district-court litigation barred the challenges in the PTO based on issue preclusion. Levi Strauss now appeals, and Abercrombie defends the Board's dismissal as justified by issue preclusion or, in the alternative, by claim preclusion. We reverse the dismissal. Ultimately because the registrations at issue in the PTO cover a much broader range of uses of the Abercrombie mark than were the subject of the district-court litigation, the results of the district-court case do not preclude Levi Strauss's challenges in the PTO. We remand for further proceedings.

## BACKGROUND

Since 1873, Levi Strauss has stitched the back pocket of its jeans with two connecting arches that meet in the center of the pocket. Levi Strauss holds multiple federally registered trademarks on this "Arcuate" (bow-shaped)

design and has extensively advertised products displaying the trademark for over a hundred years. Levi Strauss actively monitors use of competing stitching designs and enforces its trademark rights against perceived infringers.

In 2005, Abercrombie sought to register a "mirror image stitching design" for use on "[c]lothing, namely, jeans, skirts, pants and jackets." U.S. Trademark Application Serial No. 78766368 (filed Dec. 5, 2005). The registration stated no other limitations on the goods' nature, type, channels of trade, or class of purchasers. *Id.* Abercrombie subsequently divided the application. One, the parent, covered jackets and sought registration on the Principal Register; the other, the child, covered the remaining categories of clothing and sought registration on the Supplemental Register. After the parent application was published for opposition, Levi Strauss initiated Opposition Proceeding No. 91175601. The child application progressed into Supplemental Registration No. 3451669 without opportunity for Levi Strauss's opposition. Levi Strauss petitioned to cancel that registration, leading to Cancellation Proceeding No. 92049913. In both proceedings, Levi Strauss alleges that registration of Abercrombie's mirror-image design should be barred because the design, in the range of uses covered by the registration, is likely to cause confusion with and dilute the Levi Strauss Arcuate mark. *See* 15 U.S.C. § 1052(d) (likely confusion), § 1125(c) (dilution).

On July 20, 2007, after learning that Abercrombie was selling products that used the mirror-image design—the "Ruehl" line of jeans—Levi Strauss sued Abercrombie in the Northern District of California. Levi Strauss alleged, *inter alia*, that Abercrombie's use of the mirror-image design infringed the Levi Strauss Arcuate mark (15 U.S.C. §§ 1114-1117, 1125(a)) and was likely to dilute the

Arcuate mark (15 U.S.C. § 1125(c)).[1] The PTO then stayed the opposition and cancellation proceedings pending disposition of the civil action.

The district court held a jury trial in December 2008, with the jury to render a decision on the infringement claim and an advisory opinion on the dilution claim (as to which Levi Strauss sought only injunctive relief). At trial, a significant aspect of Abercrombie's defense was that its Ruehl line of jeans and Levi Strauss products were sold in such different channels and at such different prices that the former could not cause the alleged kinds of harm to the latter. *See, e.g.*, Dec. 22, 2008 Trial Transcript at 613, *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. 07-03752 (N.D. Cal. Dec. 22, 2008), ECF No. 350 ("[Y]ou don't have the same channels. Ruehl jeans are sold in Ruehl stores. No Levi's are sold in Ruehl stores. Levi's are sold in Kohl's, Penney's, Macy's."); Dec. 18, 2008 Trial Transcript at 52, *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. 07-03752 (N.D. Cal. Dec. 18, 2008), ECF No. 338 (arguing that the prices are "just different for these types of jeans").

In December 2008, the jury returned a verdict that Abercrombie's Ruehl-line uses of its mirror-image design did not infringe the Arcuate mark. In April 2009, the district court, deciding the dilution claim after the jury's advisory verdict on that claim, ruled that Levi Strauss failed to prove dilution by blurring of its Arcuate mark. On April 22, 2009, the district court entered judgment in favor of Abercrombie on both claims—which it is useful to

---

[1] The complaint stated separate claims for infringement and for unfair competition through likely confusion, 15 U.S.C. §§ 1114-1117, 1125(a), but as the case proceeded, the latter two claims were reduced to a single "infringement" claim incorporating a likely-confusion requirement.

describe as two judgments: the 2009 Judgment on Infringement and the 2009 Judgment on Dilution.

Levi Strauss did not appeal the 2009 Judgment on Infringement, which therefore became the final judgment on infringement in the case. Levi Strauss did appeal the 2009 Judgment on Dilution. In 2011, the Ninth Circuit "reversed" that judgment, and remanded the case. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1175 (9th Cir. 2011). The Ninth Circuit held that dilution by blurring does not require identity or near identity of the marks at issue (*id.* at 1162-73) and that the district court's reliance on that erroneous requirement "affected its dilution determination" and so was not harmless (*id.* at 1174).

While the Ninth Circuit appeal was pending, Abercrombie announced that it was shutting down the Ruehl brand and would close the Ruehl retail locations and online operations. About the same time, Abercrombie filed a new trademark-registration application with the PTO, which is not part of the present appeal, seeking to register its mirror-image design on "clothing, namely bottoms," and disclosing use of the design on denim shorts sold under a different Abercrombie brand name, Gilley Hicks. Abercrombie would sell its Gilley Hicks products at different prices, and through different channels, from those it had adopted for its Ruehl line. For example, whereas Abercrombie had sold Ruehl jeans at a higher price than most Levi Strauss products sold for, it sold Gilley Hicks products at prices much closer to the prices Levi Strauss set for its main products.

After returning to the district court on the remand regarding its dilution claim, Levi Strauss asked Abercrombie to agree to amend the pleadings or to augment the record (to address the Gilley Hicks line) or to stipulate that any injunction obtained by Levi Strauss based on the current record would extend to the Gilley Hicks line; but

Abercrombie refused. When Levi Strauss sought leave to amend its complaint to include the Gilley Hicks products, the district court declined, without explanation. Shortly thereafter, Levi Strauss moved to voluntarily dismiss its dilution claim under Fed. R. Civ. P. 41(a)(2), and on May 31, 2011, the district court entered judgment against Levi Strauss dismissing its claim for dilution with prejudice. The 2011 Judgment on Dilution was the final judgment on the dilution claim in the case.

Back at the PTO, the opposition and cancellation proceedings then resumed. Abercrombie filed motions for summary judgment arguing that claim preclusion and issue preclusion barred Levi Strauss's challenges in the proceedings. The Board ruled that claim preclusion did not apply because of the "significant differences" between the "transactional facts required to establish infringement in a district court, and cancellation of a registration at the Board." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, Opposition No. 91175601 & Cancellation No. 92049913, slip op. at 10 (TTAB Mar. 29, 2012). Nevertheless, the Board granted summary judgment dismissing both proceedings on the ground of issue preclusion, holding "that there is no genuine dispute of material fact that the elements of issue preclusion exist and thus operate to bar [Levi Strauss's] dilution and likelihood of confusion claims" in the opposition and cancellation proceedings. *Id.* at 17. Levi Strauss appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Neither party identifies a disputed underlying issue of fact that is material to the preclusion questions presented. Whether preclusion applies to bar a particular action is an issue of law, which this court decides de novo. *See Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 475 (Fed. Cir. 1991). We hold that neither issue nor claim preclusion

bars Levi Strauss's challenges to Abercrombie's registrations in the PTO.

I

Both doctrines preclude certain attempts at second litigation chances, but only in defined circumstances, reflecting the need to avoid depriving litigants of their first chances. For purposes of this case, we recite only certain necessary conditions for preclusion. Because we find certain necessary conditions not to be satisfied, we have no occasion to address any other matter regarding preclusion law, including what conditions would suffice for preclusion.

Issue preclusion serves, in certain circumstances, "to bar the revisiting of 'issues' that have been already fully litigated." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000). We have stated four preconditions for a second suit to be barred by issue preclusion:

(1) identity of the issues in a prior proceeding;

(2) the issues were actually litigated;

(3) the determination of the issues was necessary to the resulting judgment; and

(4) the party defending against preclusion had a full and fair opportunity to litigate the issues.

*Id.* (citing numerous authorities). What is key here is that, in order for issue preclusion to bar litigation of an issue raised in a second suit, there must be an earlier determination of that issue in a first suit and the earlier determination must have been necessary to the resulting judgment in that suit.

Claim preclusion does not depend on an earlier court's resolution of a particular issue, but prevents a litigant, in certain circumstances, from pressing issues in a second suit that it could and should have raised in earlier litiga-

tion even if it did not.  Claim preclusion, where it applies, prevents litigation of "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).  For that bar to apply, certain essential preconditions must be met, as stated in this formulation: "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).  Explaining that the crucial "same cause of action" precondition requires the "same set of transactional facts" in the two suits, we have summarized the overall preconditions: "(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." *Jet*, 223 F.3d at 1362.  We have added that "a common set of transactional facts is to be identified 'pragmatically.'"  *Id.* at 1363 (quoting Restatement (Second) of Judgments § 24(2)).

## II

Under those standards, the district court litigation between Levi Strauss and Abercrombie does not support either issue or claim preclusion to bar Levi Strauss from pressing its challenges to Abercrombie's registrations in the PTO opposition and cancellation proceedings.

## A

To begin with, neither the 2009 Judgment on Dilution nor the district court's findings that accompanied the judgment can support preclusion of either type, because the 2009 Judgment on Dilution was reversed on appeal. Dating back at least to *Butler v. Eaton*, 141 U.S. 240, 242-44 (1891), a bedrock principle of preclusion law has been that a reversed judgment cannot support preclusion; indeed, "a second judgment based upon the preclusive

effects of the first judgment should not stand if the first judgment is reversed." 18A Charles A. Wright, *et al.*, Federal Practice and Procedure § 4433 (2d ed. 2002) (footnote omitted); *see id.* § 4427 at 5 ("Should the judgment be . . . reversed on appeal, however, res judicata [in the sense covering both preclusion doctrines] falls with the judgment."); *United States Postal Serv. v. Gregory*, 534 U.S. 1, 15-16 (2001) (Ginsburg, J., concurring in the judgment); *In re Hedged-Investments Assocs.*, 48 F.3d 470, 472-73 (10th Cir. 1995); *South Carolina Nat. Bank v. Atlantic States v. Atlantic States Bankcard Ass'n*, 896 F.2d 1421, 1430-31 (4th Cir. 1990); *Erebia v. Chrysler Plastics Prods. Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989); *Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir. 1980); *DiGaetano v. Texas Co.*, 300 F.2d 895, 897 (3d Cir. 1962). If an initial reliance on preclusion must be reversed once the underlying judgment is reversed, a court cannot find preclusion in the first place based on a judgment that has already been reversed.

That longstanding principle is readily understood in the doctrinal terms stated above. The 2009 Judgment on Dilution is not an extant final judgment on the merits, as required for claim preclusion. And the 2009 district-court findings are not necessary to a resulting judgment, as required for issue preclusion, when, as is true in this case, the only judgment they supported has been reversed.

There are only two extant judgments—the 2011 Judgment on Dilution and the 2009 Judgment on Infringement. But neither issue preclusion nor claim preclusion supports dismissal of Levi Strauss's PTO challenges based on either of those judgments.

B

As to issue preclusion, the 2011 Judgment on Dilution was only a voluntary dismissal with prejudice. That judgment, while constituting an adjudication on the merits for *claim*-preclusion purposes, has no *issue*-

preclusive effect. Being a voluntary dismissal, it did not depend on the 2009 findings that supported the reversed 2009 Judgment on Dilution; indeed, it did not decide any specific issue at all. *See, e.g.*, 18A Charles A. Wright *et al.*, Federal Practice and Procedure § 4435 (2d ed. 2002) ("A stipulated dismissal with prejudice operates as an adjudication on the merits for claim-preclusion purposes, but ordinarily should not of itself count as the actual adjudication of any issue."); *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002) (citing numerous cases for the proposition that a voluntary dismissal does not actually litigate any issue).

The only possible basis for issue preclusion, therefore, is the 2009 Judgment on Infringement, which did rest on merits determinations of issues (by the jury). But that judgment cannot bar Levi Strauss's challenges in the opposition and cancellation proceedings under the doctrine of issue preclusion. The PTO proceedings involve a much broader set of issues than were presented to, or therefore adjudicated in, that court.

In the district court, the issue was whether Abercrombie's marketing of specific Ruehl-line products with the mirror-image design was likely to cause confusion with Levi Strauss's Arcuate mark. That product-specific focus in infringement litigation is common. *See Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229, 1233 (Fed. Cir. 2005) ("The issue litigated in the district court action was whether the marketing by Berkshire Fashions of specific products with either the BERKSHIRE mark or the Berkshire Fashions trade name was likely to cause confusion with Mayer/Berkshire's registered BERKSHIRE trademarks."); *Jet*, 223 F.3d at 1364 ("In the infringement context, the 'likelihood of confusion' is between the plaintiff's registered mark and the defendant's use of words, symbols, etc."). The only findings adverse to Levi Strauss that were necessary to the 2009 Judgment on Infringement (a judgment that

Abercrombie did not infringe) were findings that the specific Ruehl-line uses—on particular products, which Abercrombie sold in particular ways at particular prices—were not infringing.

An opposition or cancellation proceeding "requires consideration not only of what the applicant has already marketed or has stated the intention to market, but of all the items for which registration is sought." *Mayer/Berkshire*, 424 F.3d at 1233. Because Abercrombie seeks to register a broad class of goods—"clothing, namely, jeans, skirts, shorts, pants and jackets"—without providing further limitations, the scope of the registrations at issue exceeds what the parties litigated in the district court. *See* Trademark Manual of Examining Procedure § 1207.01(a)(iii) (presuming, absent specific limitations from the applicant, that the "registration encompasses all goods or services of the type described, that they move in all normal channels of trade, and that they are available to all classes of purchasers"). The PTO proceedings are "based on the content of the registration application" and not upon any specific use of the challenged mark in commerce. *Mayer/Berkshire*, 424 F.3d at 1232; *see also* 15 U.S.C. §§ 1063-1064 (stating grounds for opposition and cancellation proceedings, respectively). The jury's product-specific answers about the Ruehl line do not entail negative answers to the broader questions in the PTO proceedings.

For that reason, this court has rejected issue preclusion in similar circumstances—where infringement litigation was followed by PTO proceedings involving a challenge to a registration of broader scope than the subject of the infringement case. *Mayer/Berkshire*, 424 F.3d at 1232-34. Because of the difference in scope of the issues, a difference of Abercrombie's doing, this pattern represents no improper second bite at the apple, as Abercrombie alleges. Nor was there anything untoward in Levi Strauss, after securing a stay of the PTO proceedings

to litigate its case against Abercrombie's Ruehl-line uses, then restarting the PTO proceedings after losing in district court. A Levi Strauss victory in district court on the Ruehl line of uses would seem to have required rejection of Abercrombie's broad registrations, because one significant use covered by the registrations would have been proved likely to confuse (or to dilute Levi Strauss's mark); that made it sensible to stay the PTO proceedings until the district-court case ended. But the loss by Levi Strauss on its claim of infringement by the Ruehl line does not exhaust the grounds for challenging the broad registrations, because Levi Strauss may still show that other uses covered by those registrations (*e.g.*, uses on differently marketed or priced goods) come within the confusion (or dilution) standards for rejecting registrations.

Thus, the Board erred in ruling that issue preclusion barred Levi Strauss's challenges in the PTO proceedings.

C

Contrary to Abercrombie's contention, the Board's dismissal cannot be affirmed on the alternative ground that Levi Strauss's challenges to the registrations are barred by claim preclusion. That is not for want of either identity of parties in the two forums or merits judgments in the district-court case: the 2009 Judgment on Infringement and the 2011 Judgment on Dilution are both judgments on the merits in a case involving the same parties as the PTO proceedings. Rather, it is because the PTO and district-court proceedings do not involve the same transactional facts, pragmatically judged.

As the Board concluded, Abercrombie's assertion of claim preclusion based on the infringement claim resolved by the 2009 Judgment on Infringement is squarely controlled, and defeated, by this court's decisions in *Jet* and *Mayer/Berkshire*. In both cases, this court addressed whether a claim for trademark infringement arises from the same transactional facts as proceedings before the

Board, and in both it held that the "array of differences in transactional facts conclusively demonstrates that claim preclusion cannot serve to bar" such proceedings. *Jet*, 223 F.3d at 1364; *see Mayer/Berkshire*, 424 F.3d at 1232. Thus, the 2009 Judgment on Infringement does not give rise to a claim-preclusion bar on Levi Strauss's challenges in the PTO proceedings.

Levi Strauss's dilution claim, resolved by the 2011 Judgment on Dilution, is not squarely covered by *Jet* and *Mayer/Berkshire*, because those cases did not involve an earlier dilution claim. But the rationale of the court's decisions in those cases extends to this situation. The 2011 Judgment on Dilution is not claim preclusive in the PTO because the dilution claim in district court, like the infringement claim, involved a distinctly narrower set of product-specific transactional facts than those at issue in the registration proceedings. The logic of *Jet* and *Mayer/Berkshire* thus requires rejection of claim preclusion altogether in this case.

To evaluate a claim for dilution under 15 U.S.C. § 1125(c), a court asks if the defendant has "commence[d] use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment" of the plaintiff's famous mark. Moreover, "[i]n determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including" "[w]hether [the defendant] intended to create an association with the famous mark" and "[a]ny actual association between the mark or trade name and the famous mark." *Id.* Under that standard, even if (as we need not decide) a dilution case brought in district court might try to cover the same full set of transactional facts relevant to a registration proceeding, a dilution case need not be so broad. Levi Strauss's dilution claim in district court did not need to involve the full range of uses, present or future, covered by Abercrombie's registration, or to encompass whether that range of uses is likely to dilute

the Levi Strauss mark (or, for that matter, to cause confusion).

In fact, all indications are that Levi Strauss's dilution claim, like its infringement claim, was understood as challenging the uses of the stitching design that Abercrombie made on Abercrombie's Ruehl line of clothing, not the full range of uses Abercrombie's registration seeks to cover. The district court, in its instructions on the dilution claim for which it was seeking an advisory verdict, told the jury to take into account whether "the Arcuate trademark and the Ruehl design are used on competing goods." Final Jury Instructions at 30, *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. 07-03752 (N.D. Cal. Dec. 22, 2008), ECF No. 348. As far as the parties have informed us, all of the evidence was about Abercrombie's use of what it then called its "Ruehl design" on its Ruehl line of products. Abercrombie's proposed findings and conclusions reflect that limitation. *See* Abercrombie's Proposed Findings of Fact & Conclusions of Law Regarding Trademark Dilution Claim at 2-4, *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. 07-03752 (N.D. Cal. Jan. 9, 2009), ECF No. 358 (describing Abercrombie's Ruehl-line use in detail, including that the design is limited to only 27 Ruehl stores and its website and stating that to prevail on its dilution claim Levi Strauss must demonstrate that "Abercrombie is making or has made use in commerce of an identical or nearly identical trademark"). Moreover, when Levi Strauss asked Abercrombie to agree that any injunction to be issued if Levi Strauss prevailed on its dilution claim would extend beyond the Ruehl products, Abercrombie refused. That refusal seems to be an insistence, and in any event confirms, that the case was limited to the Ruehl line, with other possible Abercrombie uses (covered by the challenged registrations) raising distinct issues.

This understanding of the limited scope of the dilution claim in the district court litigation reflects the general

reasons that the "pragmatic" approach to the "transactional facts" inquiry should not treat the dilution claim here as involving the same set of transactional facts as the full range of facts involved in the PTO proceedings. Such treatment would effectively require the famous-mark owner, to avoid the claim-preclusion bar on claim-splitting, to litigate in the initial dilution case the full range of existing and even potential but yet-unknown uses that are pertinent to the PTO inquiry relevant to a broad registration. That is not pragmatically warranted. The dilution inquiry involves, at least through the "association" inquiries of 15 U.S.C. § 1125(c), the effect on consumers' views that different real-world uses were intended to have and do have, and the answer to that inquiry accordingly can change as the uses change. Just as the "actual confusion" inquiry can change as uses change, *Mayer/Berkshire*, 424 F.3d at 1233-34, so can the dilution inquiry. On both issues, the future can differ materially from the present. The pragmatic policies of claim preclusion do not support ignoring such differences. Nor do they justify inviting a two-stage strategy by a rival hoping to dilute a famous mark—start with a use that is hardest to prove dilutive, defeat the famous-mark owner's challenge to that use, and then introduce more obviously dilutive uses of the very same mark with an impunity given by claim preclusion. For such reasons, the judgment on Levi Strauss's dilution claim in district court does not preclude the PTO challenges any more than the judgment on its infringement claim does.

## CONCLUSION

Because the Board erred in ruling that issue preclusion barred Levi Strauss's challenges in related opposition and cancellation proceedings, and the result cannot rest in the alternative on claim preclusion, we reverse and remand.

Costs.

**REVERSED AND REMANDED**