NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PETRO MEX, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1848

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-01024-MBH, Senior Judge Marian Blank Horn.

---

Decided: September 12, 2024

---

ROBERT GREENSPOON, Dunlap Bennett & Ludwig PLLC, Chicago, IL, argued for plaintiff-appellant. Also represented by WILLIAM W. FLACHSBART.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before MOORE, *Chief Judge*, CUNNINGHAM, *Circuit Judge*, and MAZZANT, *District Judge*.[1]

MAZZANT, *District Judge.*

Petro Mex, LLC (Petro Mex) appeals a decision of the United States Court of Federal Claims. For the following reasons, we reverse the Court of Federal Claims' determination that Petro Mex's breach of contract claim is barred by the statute of limitations. We vacate the remainder of the Court of Federal Claims' decision and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I.   Factual Background

The United States Department of the Interior executed the Garfield Lease (the Lease) with Celeste C. Grynberg in 1965. In 2004, Petro Mex assumed the Lease.

Section 1 of the Lease sets forth the "Rights of Lessee":

Rights of Lessee. — The lessee is granted the *exclusive right and privilege to drill for, mine, extract, remove, and dispose of all the oil and gas deposits*, . . . for a period of 10 years, *and so long thereafter as oil or gas is produced in paying quantities*; subject to any unit agreement heretofore or hereafter approved by the Secretary of the Interior, the provisions of said agreement to govern the lands subject thereto where inconsistent with the terms of this lease.

J.A. 3, 2133 (emphasis added). "Production in paying quantities" is defined as: "production from a lease of oil and/or

---

[1]    Honorable Amos L. Mazzant, III, District Judge, United States District Court for the Eastern District of Texas, sitting by designation.

gas of sufficient value to exceed direct operating costs and the costs of lease rentals, or minimum royalties." 43 C.F.R. § 3160.0-5. Upon assumption of the Lease, Petro Mex began extracting natural gas in paying quantities pursuant to Section 1.

Notably, Section 7 of the Lease sets forth the "Proceedings in case of default":

> Proceedings in case of default. — If the lessee shall not comply with any of the provisions of the act or the regulations thereunder or of the lease, or make default in the performance or observance of any of the terms hereof (except that of payment of annual rental which results in the automatic termination of the lease), and such default shall continue for a period of 30 days after service of written notice thereof by the lessor, this lease may be cancelled by the Secretary of the Interior in accordance with section 31 of the act, *except that if this lease covers lands known to contain valuable deposits of oil or gas, the lease may be cancelled only by judicial proceedings in the manner provided in section 31 of the act*, but this provision shall not be construed to prevent the exercise by the lessor of any legal or equitable remedy which the lessor might otherwise have. Upon cancellation of this lease, any casing material, or equipment determined by the lessor to be necessary for use in plugging or preserving any well drilled on the leased land shall become the property of the lessor. A waiver of any particular cause of forfeiture shall not prevent the cancellation and forfeiture of this lease for any other cause of forfeiture, or for the same cause occurring at any other time.

J.A. 3–4, 2133 (emphasis added).

A Board of Land Management (BLM) petroleum engineer technician, Edward Fancher (Fancher), was responsible for inspecting the wells on the Lease. If Fancher identified an issue during inspection, he had authority to issue a Notice of Incident of Noncompliance (INC). Upon issuance of an INC, an abatement period would follow so that repairs could be made to bring the well back into compliance. An INC is classified by either a "major" or "minor" violation. *See* 43 C.F.R. § 3160.0-5 (defining "major" as "noncompliance that causes or threatens immediate, substantial, and adverse impacts on public health and safety, the environment, production accountability, or royalty income"; defining "minor" as "noncompliance that does not rise to the level of a major violation").

On April 25, 2008, Fancher inspected three wells on the Lease. He issued five INCs, one of which was for a major violation—an unsealed sales valve. On May 27, 2008, Fancher conducted a subsequent inspection and found that Petro Mex had not corrected the prior five INCs. Additionally, Fancher identified an underground gas leak. When Fancher returned on May 29, 2008, Petro Mex had not repaired the leak. At that time, Fancher issued an INC for a major violation—the gas leak—and directed Petro Mex to repair the leak by May 31, 2008. Fancher also sealed the oil sales valve to prevent further removal of oil.

Concurrently, Fancher issued a "Notice to Shut Down Operation" under 43 C.F.R § 3163.1(a)(3)[2] (the Shut-In

---

[2]    43 C.F.R. § 3163.1(a)(3) provides that "[w]hen necessary for compliance, or where operations have been commenced without approval, or where continued operations could result in immediate, substantial, and adverse impacts on public health and safety, the environment, production accountability, or royalty income, the authorized officer may shut down operations. Immediate shut-in action may be taken where operations are initiated and

Order). J.A. 2202. The Shut-In Order stated that Petro Mex must immediately "shut in all well[s] on this [L]ease until all leaks are corrected and all compliance issues are resolved." J.A. 2202. It warned that "[o]perations are not to be resumed until permitted by the authorized officer." J.A. 2202.

Around the same time in May of 2008, BLM increased Petro Mex's existing $25,000 reclamation bond to $100,000. Petro Mex did not immediately pay the increased bond.

On June 16, 2008, Fancher visited the wells on the Lease for another inspection. Fancher observed that the underground gas leak had been repaired and the wells had been shut in so that they were inoperable. The Shut-In Order remained in effect despite the repaired gas leak.

In October of 2008, the Department of the Interior issued a notice of civil penalty to Petro Mex for unpaid royalty payments on the gas it had produced from wells on the Lease in 2007 and 2008. Petro Mex did not immediately pay the civil penalty.

On March 30, 2009, Fancher conducted another inspection of the wells on the Lease. He determined that the wells were now not capable of producing in paying quantities because a field compressor had been removed. Fancher also noted that Petro Mex had produced oil and gas from August through October 2008, though the Shut-In Order remained in effect.

On April 1, 2009, Robert Hartman (Hartman), a BLM petroleum engineer, issued a written notice to Petro Mex

---

conducted without prior approval, or where continued operations could result in immediate, substantial, and adverse impacts on public health and safety, the environment, production accountability, or royalty income."

that BLM would "terminate" the Lease by operation of law pursuant to 43 C.F.R. § 3107.2-2[3] "[i]f justification that the [L]ease is capable of production in paying quantities is not submitted within 60 days." J.A. 2244. The notice indicated that the removal of the field compressor "eliminates the possibility of production from the wells." J.A. 2244. Appellants argue that Jesus Villalobos, owner and president of Petro Mex, and Hartman communicated repeatedly concerning the production of the wells, the unpaid civil penalty, and the unpaid bond, but they did not reach a resolution.

On July 21, 2009, Hartman sent a memorandum to the BLM State Director recommending termination of the Lease because Petro Mex's wells were allegedly not capable of production in paying quantities. On August 26, 2009, after determining that the wells were not capable of producing in paying quantities, BLM's Colorado State Office determined that the Lease terminated by operation of law. Importantly, BLM did not file a judicial action to cancel the Lease.

## II.  Proceedings before the Interior Board of Land Management

Petro Mex filed a timely administrative appeal with the Interior Board of Land Management (IBLA) challenging BLM's termination of the Lease as violative of Petro

---

[3]    43 C.F.R. § 3107.2-2 provides that "[a] lease which is in its extended term because of production in paying quantities shall not terminate upon cessation of production if, within 60 days thereafter, reworking or drilling operations on the leasehold are commenced and are thereafter conducted with reasonable diligence during the period of nonproduction. The 60-day period commences upon receipt of notification from the authorized officer that the lease is not capable of production in paying quantities."

Mex's rights under the Mineral Leasing Act (MLA). J.A. 514, 520. On September 27, 2010, the IBLA issued its decision reversing BLM's termination and remanding to BLM. J.A. 513.

Under the MLA, "a lease in its extended term terminates automatically when production ceases." J.A. 517 (citing 30 U.S.C. § 226(e) (2006)). However, there are three exceptions to lease termination: "(1) where the lessee begins reworking or drilling a well within 60 days after production ceased; (2) where BLM has ordered a suspension of lease operations or production; and (3) where the lessee places a well capable of producing in paying quantities in producing status within a reasonable time after receiving notice from BLM." J.A. 517–18 (citing 30 U.S.C. § 226(i)). The IBLA explained that

> [b]oth [30 U.S.C. § 226(i)] and the case law differentiate between a lease without a well capable of production in paying quantities and one containing a well capable of production in paying quantities. When the term of an oil and gas lease has been extended by production and there is no well capable of production in paying quantities when production ceases, the lessee has 60 days to commence reworking or drilling operations and must continue the reworking or drilling operations with reasonable diligence to avoid lease termination; if such operations are not timely initiated and diligently pursued, the lease terminates automatically upon cessation of production. . . . Notice is not required in this situation. . . . When the term of an oil and gas lease has been extended by production and the lease does contain a well capable of production in paying quantities, however, BLM must notify the lessee and allow a reasonable time of at least 60 days from receipt of the notice to place the well into

production to avoid having BLM declare the lease
expired by operation of law for lack of production.

J.A. 518–19 (citing *Coronado Oil Co.*, 164 Interior Dec. 309,
322–23 (IBLA 2005), *aff'd. Coronado Oil Co. v. U.S. Dep't
of Interior*, No. 05-CV-111-J (D. Wyo. Aug. 23, 2006), *appeal dismissed*, No. 06-8083 (10th Cir. Sept. 14, 2007)).

Petro Mex contended BLM's Grand Junction Field Office (the Field Office) erred in determining that the wells
were not capable of producing in paying quantities and that
Petro Mex was "precluded by [the Shut-In Order] from restoring production under the MLA's third exception." J.A.
520–21. The IBLA noted it was "undisputed that if [the
Shut-In Order] w[as] lifted, Petro Mex could install field
compressors and return [the wells] to producing status
shortly thereafter." J.A. 521. Thus, the IBLA agreed with
Petro Mex that it was error to determine that the wells
were not capable of producing gas in paying quantities under 43 C.F.R. § 3107.2-2 because they lacked a field compressor and an ability to compress the gas produced for
pipeline transport. J.A. 522.

Because the wells were capable of producing in paying
quantities, the IBLA determined that Petro Mex could
have avoided lease termination under the MLA if it could
place the wells in producing status within a reasonable
time after receiving notice under 43 C.F.R. § 3107.2-3. J.A.
522. However, the Field Office refused to lift the Shut-In
Order, and it remained in place through August 26, 2009,
when BLM terminated the lease. J.A. 523. The IBLA found
that the Field Office erroneously refused to lift the Shut-In
Order. J.A. 523. And the IBLA further explained, "[u]ntil
[the Field Office] lifts [the Shut-In Order] and gives notice
to Petro Mex under 43 C.F.R. § 3107.2-3, BLM cannot terminate [the Lease] for nonproduction." J.A. 523. "If it intends to pursue lease termination under 30 U.S.C. § 226(i),
BLM must allow Petro Mex a reasonable time in which to

place its wells in a producing status after such notice is given." J.A. 523.

Finally, the IBLA explained that "BLM has lost sight of the distinction between cancelling a lease with a well capable of producing oil and gas lease in paying quantities for noncompliance and terminating such a lease for nonproduction." J.A. 524. "Not being allowed to resume production from [the Lease] because of BLM's [Shut-In Order] is not synonymous with [its] not having wells capable of production. Petro Mex's failure to comply with the authorized officer's order renders the [Lease] subject to cancellation through judicial proceedings . . . ." J.A. 524. Accordingly, the IBLA reversed BLM's termination of the Lease. J.A. 525. After the IBLA entered its decision, the Field Office lifted the Shut-In Order, and Petro Mex resumed production.

### III. Proceedings before the Court of Federal Claims

On October 22, 2014, Petro Mex filed its Complaint in the Court of Federal Claims, asserting breach of contract claims against the United States (the Government) under the Tucker Act, 28 U.S.C. § 1346, 1491. J.A. 159. Petro Mex alleged two separate breaches of the Lease: 1) "[the Government] breached the Lease[] and its agreement with Petro Mex by ordering Petro Mex to cease production on the Lease[] in October of 2008" and 2) "[the Government] breached the Lease[] and its agreement with Petro Mex by attempting to terminate the Lease[] on or about August 26, 2009."[4] J.A. 63–64, 165. The Government filed a motion to dismiss Petro Mex's Complaint on statute-of-limitations grounds, which the Court of Federal Claims denied. J.A. 60.

---

[4]    Petro Mex only appeals the Court of Federal Claims' decision as to the second alleged breach, termination of the Lease on or about August 26, 2009.

Petro Mex then moved for partial summary judgment, arguing that issue preclusion should apply to its breach of contract claims. J.A. 847. In Petro Mex's view, it was entitled to partial summary judgment on the issue of liability based on the IBLA's decision that BLM terminated the Lease in violation of the MLA. J.A. 847–48. The Court of Federal Claims denied Petro Mex's motion for partial summary judgment, determining that issue preclusion was not applicable. J.A. 1144. The Court of Federal Claims opined that "Petro Mex did not raise breach of contract claims before the [IBLA]" and "whether the Government committed a material breach of contract was not fully litigated by the parties" in the IBLA proceeding. J.A. 1143–44. The IBLA's "decision was based on a narrow set of issues that did not ultimately decide whether a breach of contract occurred." J.A. 1144. And the IBLA "did not need to determine whether the Government breached the [L]ease to decide that termination was improper based on bureaucratic guidelines." J.A. 1144. The Court of Federal Claims conducted no further analysis on issue preclusion. J.A. 1144.

The Court of Federal Claims held a bench trial. J.A. 1. In its post-trial filing, the Government again argued that Petro Mex's breach of contract claim is barred by the statute of limitations. J.A. 60. In response, Petro Mex made the following assertions:

> Petro Mex asserts, and has always asserted, that the specific action constituting breach of the [L]ease was the actual unauthorized termination of the [L]ease on or about August 26, 2009. While the original failure to lift the Shut-In Order in June 2008 began a series of actions that ultimately led to the Government's decision to terminate the [L]ease, that particular action was, in fact, an "independent and distinct event" that can be found to have its own "associated damages."

J.A. 79. The Court of Federal Claims construed these two assertions as one argument under a continuing claims doctrine theory. *Id.*

After trial, the Court of Federal Claims entered its Findings of Fact and Conclusions of Law. The Court of Federal Claims disagreed with Petro Mex's argument that the continuing claims doctrine applied. J.A. 82. Rather, it found that the termination of the Lease in August 2009 was a "continuing negative effect[]" of BLM's failure to lift the Shut-In Order in June or July of 2008. *Id.* Therefore, the Court of Federal Claims held that Petro Mex was on notice that its claim accrued prior to August 2008. J.A. 83. Accordingly, Petro Mex's claim for breach of contract was barred by the six-year statute of limitations. *Id.*

Additionally, the Court of Federal Claims held that BLM's termination of the Lease was not a breach of the Lease. J.A. 122. And if BLM had breached the Lease, BLM's breach would be excused by Petro Mex's prior material breaches. J.A. 143.

Petro Mex appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.   Statute of Limitations

"We review whether a claim is barred by the statute of limitations de novo." *Katzin v. United States*, 908 F.3d 1350, 1358 (Fed. Cir. 2018).

Pursuant to the Tucker Act, the Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "Every claim of which the United States Court of Federal Claims has

jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. This six-year statute of limitations is a jurisdictional requirement. *Bianchi v. United States*, 475 F.3d 1268, 1274 (Fed. Cir. 2007).

"[A] statute of limitations begins to run from the date the plaintiff's cause of action 'accrues.'" *Hair v. United States*, 350 F.3d 1253, 1260 (Fed. Cir. 2003) (citing 28 U.S.C. § 2501). "Generally, a claim against the United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Bowen v. United States*, 292 F.3d 1383, 1385 (Fed. Cir. 2002) (internal quotation marks omitted); *see also Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (stating that a claim accrues "only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence").

However, the continuing claims doctrine allows "later arising claims even if the statute of limitations has lapsed for earlier events." *Tamerlane, Ltd. v. United States*, 550 F.3d 1135, 1145 (Fed. Cir. 2008) (citation omitted). "The continuing claims doctrine has been applied when the government owes a continuing duty to the plaintiffs. In such cases, each time the government breaches that duty, a new cause of action arises." *Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000). The doctrine is applicable where a plaintiff's claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Ests.–Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997). By contrast, the continuing claims doctrine does not apply to single events that have continuing negative effects. *Id.*

On appeal, Petro Mex argues that the Court of Federal Claims erred in determining that its breach of contract claim based on BLM's wrongful termination of the Lease accrued prior to August 2008. Petro Mex generally characterizes its argument as one applying the continuing claims doctrine, but it makes several assertions that support an accrual argument.

Specifically, Petro Mex asserts that its breach of contract claim "based on [] BLM's termination of the [L]ease in August 2009 is based on an 'independent and distinct' breach of the [] [L]ease." Appellant's Opening Br. 36. Moreover, Petro Mex asserts that its claim for breach of contract could not have accrued prior to August 2008 because not all the necessary events had occurred. *See* Appellant's Opening Br. 37–38 (citing *Hopland*, 855 F.2d at 1577 ("[A] cause of action against the government has 'first accrued' only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.")). According to Petro Mex, though the Shut-In Order should have been lifted by mid-2008, termination "was not even a whisper" at that time. Appellant's Opening Br. 38. Thus, "no cause of action by Petro Mex for wrongful-termination-breach was possible" yet. Appellant's Opening Br. 38.

In response, BLM argues that Petro Mex did not sufficiently challenge the Court of Federal Claims' determination of the accrual date on appeal. Further, BLM argues that the continuing claims doctrine does not apply because termination of the Lease was a natural consequence of the Shut-In Order.

Though Petro Mex's briefing could be clearer, we understand Petro Mex to be arguing that the accrual date for its breach of contract claim is August 26, 2009—the date

BLM terminated the Lease.[5] We agree with Petro Mex that the Court of Federal Claims erred in determining that Petro Mex's claim accrued prior to August 2008.

Petro Mex's breach of contract claim for wrongful termination of the Lease stems from BLM's termination of the Lease. Thus, Petro Mex's claim could not have accrued until BLM terminated the Lease. Only after this final event took place was Petro Mex entitled to bring an action for breach of contract based on that termination. *See Bowen*, 292 F.3d at 1385. Accordingly, Petro Mex's breach of contract claim accrued on August 26, 2009, when BLM terminated the Lease. Petro Mex filed its claim in the Court of Federal Claims on October 22, 2014—less than six years after the claim accrued. As such, Petro Mex's claim for breach of contract for wrongful termination is not time-barred. We reverse the decision of the Court of Federal

---

[5]    Petro Mex has contended on several occasions throughout the course of litigation that its breach of contract claim accrued on August 26, 2009. Petro Mex first did so in its Complaint when it alleged that "[t]he United States breached the Lease[] and its agreement with Petro Mex by attempting to terminate the Lease[] on or about August 26, 2009 when it had no valid contractual, statutory or regulatory grounds to do so." J.A. 165. In its post-trial filing in the Court of Federal Claims, Petro Mex asserted that "the specific action constituting a breach of the [L]ease was the actual unauthorized termination of the [L]ease on or about August 26, 2009." J.A. 79. At oral argument before this Court, counsel for Petro Mex confirmed that Petro Mex claims its breach of contract claim based on termination accrued on August 26, 2009—the date BLM terminated the Lease. Oral Arg. at 2:34–5:18, https://cafc.uscourts.gov/home/oral-argument/listen-to-oral-arguments/.

Claims with respect to the August 26, 2009 breach of contract claim.

Petro Mex makes additional arguments that the Court of Federal Claims erred in determining that the continuing claims doctrine does not apply to its breach of contract claim. We decline to address these arguments in light of our holding that Petro Mex's breach of contract claim for wrongful termination accrued on August 26, 2009.

## II. Issue Preclusion

"The application of issue preclusion presents a question of law that we review de novo." *SynQor, Inc v. Vicor Corp.*, 988 F.3d 1341, 1347 (Fed. Cir. 2021).

"The idea [of issue-preclusion] is straightforward: Once a court has decided an issue, it is 'forever settled as between the parties.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015). "'[W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Id.* (citing Restatement (Second) of Judgments § 27 (A.M.L. Inst. 1980)).

"[I]n those situations in which Congress has authorized agencies to resolve disputes, 'courts may take it as given that Congress has legislated with the expectation that the principle [of issue preclusion] will apply except when a statutory purpose to the contrary is evident.'" *SynQor, Inc.*, 988 F.3d at 1347 (citing *B & B Hardware*, 575 U.S. at 148). Accordingly, issue preclusion applies to findings in administrative proceedings where the "administrative agency is acting in a judicial capacity and resolve[s] disputed issues of fact properly before it which the parties [] had an adequate opportunity to litigate." *U.S. v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966). "[B]oth this court and the Supreme Court have recognized the binding effect of

IBLA decisions on related lawsuits before the Claims Court." *Taylor Energy Company LLC v. United States*, 975 F.3d 1303, 1311 n.6 (Fed. Cir. 2020) (citing *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422–23, (1966); *Aulston v. United States*, 823 F.2d 510, 514–15 (Fed. Cir. 1987)).

Issue preclusion bars successive litigation when the following elements are met: "(1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1371 (Fed. Cir. 2013).

In its order on summary judgment, the Court of Federal Claims determined that BLM's violation of the MLA for wrongful termination, as decided in the IBLA proceeding, should not be given preclusive effect when considering Petro Mex's breach of contract claim because there was not identity of issues. J.A. 1143. Specifically, the Court of Federal Claims found that "Petro Mex did not raise breach of contract claims before the [IBLA]" and the IBLA's decision "did not ultimately decide whether a breach of contract had occurred." J.A. 1143–44. Therefore, in the Court of Federal Claims' view, issue preclusion did not apply, and Petro Mex was not entitled to summary judgment. J.A. 1144.

On appeal, Petro Mex argues that issue preclusion is applicable, and the Court of Federal Claims erred in declining to apply the concept to the IBLA's findings due to insufficient identity of issues. In Petro Mex's view, the IBLA's conclusion that BLM wrongfully terminated the Lease should have been given preclusive effect when the Court of Federal Claims considered Petro Mex's claim for breach of contract. In support, Petro Mex contends that the IBLA's findings rendered in the administrative proceeding addressed a key subsidiary issue also raised in the federal

judicial proceedings: whether BLM wrongfully terminated the Lease. And Petro Mex contends that the allegation that BLM wrongfully terminated the Lease is a "key component" of Petro Mex's breach of contract claim. Therefore, Petro Mex claims that the issues are sufficiently identical. Further, Petro Mex argues that the remainder of the issue preclusion elements are met and that this Court should conclude that BLM breached the Lease.

In response, the Government contends that the IBLA decision does not answer the question of whether BLM materially breached the Lease by terminating it pursuant to 43 C.F.R. § 3107.2-2. Thus, the Government argues that issue preclusion does not apply.

We find that the Court of Federal Claims erred when it did not conduct a proper issue preclusion analysis. At the summary judgment stage, the Court of Federal Claims determined the IBLA's decision that BLM terminated the Lease in violation of the MLA had no preclusive effect on Petro Mex's breach of contract claim because there was not identity of issues. Though a violation of a regulation does not always equate to a breach of contract, *see Nutt v. United States*, 12 Cl. Ct. 345, 351 (1987), *aff'd sub nom. Smithson v. United States*, 847 F.2d 791, 794–95 (Fed. Cir. 1988), the Court of Federal Claims did not consider BLM's specific contractual obligations when analyzing whether there was identity of issues. Rather, the Court of Federal Claims made the sweeping determination that because the IBLA did not directly decide whether a breach of contract had occurred, there was not identity of issues and issue preclusion did not apply to Petro Mex's claim. This was error.

Additionally, the Court of Federal Claims erred when it did not consider the preclusive effect of any of the IBLA's other findings. By way of example, the IBLA found the following:

- It was error to determine that the wells "were not capable of producing gas in paying

quantities under 43 C.F.R. § 3107.2-2 because they currently lacked field compressors." J.A. 522.

- "Until [the Field Office] lifts [the Shut-In Order] and gives notice to Petro Mex under 43 C.F.R. § 3107.2-3, BLM cannot terminate [the Lease] for nonproduction. If it intends to pursue lease termination under 30 U.S.C. § 226(i), BLM must allow Petro Mex a reasonable time in which to place its wells in a producing status after such notice is given." J.A. 523.
- "Petro Mex's failure to comply with the authorized officer's order renders the [Lease] subject to cancellation through judicial proceedings, provided the procedures in 43 C.F.R §§ 3108.3 and 3163.1 are followed." J.A. 524.

Despite these findings by the IBLA, the Court of Federal Claims did not conduct any analysis on their preclusive effect.

The IBLA previously made findings that gave rise to its decision that BLM wrongfully terminated the Lease in violation of the MLA. At the summary judgment stage, the Court of Federal Claims erred when it did not conduct a proper issue preclusion analysis on the IBLA's finding that BLM wrongfully terminated the Lease. Moreover, the Court of Federal Claims erred when it did not conduct an issue preclusion analysis at all on the other findings by the IBLA. We vacate the Court of Federal Claims' decision and remand for it to consider what preclusive effect, if any, the IBLA's findings have on the parties' claims.

III. Breach of Contract and Prior Material Breach

Petro Mex additionally contends the Court of Federal Claims erred in determining that BLM's termination of the Lease was not a breach of the Lease. And Petro Mex further contends that the Court of Federal Claims erred in alternatively determining that if BLM had breached the Lease,

BLM's breach would be excused by Petro Mex's prior material breaches.

Because the Court of Federal Claims erred in not conducting a proper issue preclusion analysis in the first instance, we do not need to reach these issues. On remand, the Court of Federal Claims should consider these remaining claims.[6]

## CONCLUSION

For the foregoing reasons, Petro Mex's breach of contract claim for wrongful termination of the Lease is not barred by the statute of limitations. Petro Mex's claim accrued on August 26, 2009—the date the Lease was terminated. Therefore, we reverse the Court of Federal Claims' determination that the six-year statute of limitations expired with regards to the August 26, 2009 breach of contract claim.

Because the Court of Federal Claims erred when it did not properly consider whether the findings previously made by the IBLA have preclusive effect, we vacate the remainder of the Court of Federal Claims' decision, and we

---

[6]    At oral argument, counsel for the Government conceded that because the IBLA determined that the well on the Lease was capable of producing in paying quantities and Petro Mex was not allowed to produce, the Field Office should have judicially cancelled the Lease. Oral Arg. at 27:55–28:05, https://cafc.uscourts.gov/home/oral-argument/listen-to-oral-arguments/. When counsel for the Government was asked if she agreed that there was a violation of Section 7 of the Lease, she responded, "Correct. They should have judicially cancelled the Lease. And that is what the IBLA said." Oral Arg. at 28:30–28:37, https://cafc.uscourts.gov/home/oral-argument/listen-to-oral-arguments/.

remand for it to conduct further proceedings consistent with this opinion.

### REVERSED-IN-PART, VACATED-IN-PART, and REMANDED

COSTS

No costs.